UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY BERG #376916,

    Petitioner,

v.

LINDA M. METRISH,

    Respondent.
_____/

CASE NO. 2:07-CV-14565
HONORABLE ANNA DIGGS TAYLOR
UNITED STATES DISTRICT JUDGE

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

### I. Introduction

This is a habeas case under 28 U.S.C. § 2254. Timothy Berg, ("Petitioner"), is a state inmate who is currently confined at a Michigan correctional facility. Petitioner is serving six terms of life imprisonment, nine terms of ten-to-fifteen years, and one term of thirteen-to-twenty years. The sentence results from his Saginaw Circuit Court convictions of six counts of first-degree criminal sexual conduct, M.C.L. 750.520b, nine counts of second-degree criminal sexual conduct, M.C.L. 750.520c, and one count of sexually abusive activity, M.C.L. 750.145c, respectively. Petitioner has filed a *pro se* petition for writ of habeas corpus claiming that he is incarcerated in violation of his constitutional rights. Respondent, through the Michigan Attorney General's Office, has filed a response, arguing that petitioner's claims lack merit or are not cognizable by this Court. For the reasons which follow, the petition will be denied.

1

## II. Procedural History

Petitioner pled guilty pursuant to a plea agreement in the Saginaw Circuit Court to multiple charges related to his sexual conduct with his ten-year-old daughter. In exchange for the plea the prosecutor dismissed charges brought in a separate case in which Petitioner was accused of committing additional acts of criminal sexual conduct. Following sentencing, Petitioner was appointed appellate counsel who filed a motion to withdraw the plea, for an evidentiary hearing, and for resentencing. The trial court held a hearing on these motions, and on January 5, 2004, the Court issued an opinion finding that the motions had been untimely filed.

Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals, raising four claims: (1) the trial court erred in finding that Petitioner's post-judgment motion was untimely; (2) Petitioner was entitled to resentencing due to incorrectly scored guidelines, inaccuracies in the pre-sentence information report, and due to the disproportionality of his sentence; (3) the trial court erred in using superceded sentencing guidelines; and (4) Petitioner's plea was not understandingly or voluntarily made due to ineffective assistance of counsel, a misunderstanding of which sentencing guidelines would be used, and because the plea bargain was illusory.

It is important to note that with respect to Petitioner's first three appellate claims, nowhere in his application for leave to appeal filed in the Michigan Court of Appeals did he argue that the alleged errors involved a violation of his Federal constitutional rights. The claims were all based on alleged violations of state law.

Petitioner did, however, allege that his federal constitutional rights were violated with respect to his fourth appellate claim: he asserted that he was denied the effective assistance of counsel under the Sixth Amendment, and he asserted that his plea was unknowing and involuntary under the Fourteenth Amendment.

The Michigan Court of Appeals denied the application for leave to appeal "for lack of merit in the grounds presented." *People v. Berg*, No. 253462 (Mich.Ct.App. March 24, 2004). Petitioner filed an application for leave to appeal in the Michigan Supreme Court in which he raised the same issues, but the court denied Petitioner leave to appeal. *People v. Berg,* No. 126004 (Mich.Sup.Ct. August 31, 2004).

Petitioner returned to the trial court and filed a motion for relief from judgment. The motion raised six claims. The first claim presented in the motion raised the same argument that now forms Petitioner's first habeas claim. The sixth claim presented in the motion raised additional allegations of ineffective assistance of counsel that now form a portion of Petitioner's second habeas claim. Specifically, the motion alleged that counsel was ineffective for: (1) failing to object to the scoring of the sentencing guidelines; (2) failing to challenge the accuracy of the information in the presentencing information report; and (3) failing to offer mitigating evidence at sentencing. Petitioner also claimed that his appellate counsel was ineffective for failing to seek an evidentiary hearing to support his claims during the direct appeal.

The trial court denied the motion on the merits on August 25, 2005. Petitioner filed an application for leave to appeal, but the Michigan Court of Appeals dismissed it as untimely. *People v. Berg*, No. 272715 (Mich.Ct.App. October 25, 2006). A

3

subsequent motion for reconsideration was likewise denied on December 13, 2006. Petitioner filed an application for leave to appeal in the Michigan Supreme Court, but leave to appeal was denied. *People v. Berg*, No. 132719 (Mich.Sup.Ct. September 10, 2007).

Petitioner has now filed an application for writ of habeas corpus alleging the following claims:

> I. Defendant was denied his state and federal constitutional rights to due process when the court enhanced his sentence by using the 1998 sentencing guidelines and by scoring sentencing variables based on alleged facts which the prosecutor did not prove to a jury beyond a reasonable doubt, and where the court failed to based defendant's sentence solely on his admissions at the plea, violating Amendments VI and XIV.
>
> II. Defendant was denied his constitutional right to due process when denied the effective assistance of counsel where: (1) trial counsel misled him on the value of his guilty plea, failed to contest application of the 1998 sentencing guidelines, failed to contest accuracy of PSIR, and failed to present mitigating circumstances of the offense at sentencing, and, (2) where appellate counsel filed an untimely motion to withdraw plea and for evidentiary hearing, or resentencing, violating Amendments VI and XIV.

### III. Facts

At Petitioner's plea hearing it was established that Petitioner's ten-year-old daughter was the victim in the case. Petitioner admitted that he utilized a video camera to prepare a videotape of his daughter nude while he engaged in various sexual activities with her, including multiple acts of sexual penetration. Petitioner admitted that he performed these acts for the purpose of sexual gratification, and that the acts appearing on the videotape occurred on or about August or September of 2000.

4

Petitioner's trial counsel stated at the plea hearing that he had discussed the scoring of the sentencing guidelines and what the score might be. Counsel acknowledged that he advised Petitioner that the trial court had the authority to exceed or depart below the recommended guideline range. Counsel also stated that he explained to Petitioner that "the guidelines do not come into play in this plea offer and are not part of any plea agreement. . . ." R 9-4, Plea Hearing at 3. Counsel reiterated that "the sentence does not enter into the plea agreement in any way. I believe Mr. Berg understands all that, your Honor, and is prepared to enter a plea of guilty to the 16 counts at this time." R 9-4, Plea Hearing at 4.

Petitioner acknowledged his understanding of the terms of the plea bargain, and he denied that anyone had promised him anything other beyond what was stated on the record. R 9-4, Plea Hearing at 9. The court accepted the plea.

At the sentencing hearing, Petitioner acknowledged that he reviewed the presentence report with his lawyer. When the court asked whether there were any inaccuracies in the report, Petitioner stated, "I believe it's all – yes," at which point his attorney apparently interrupted and stated, "Yes, it's accurate, Judge." R 9-6, Sentencing Hearing, at 3.

Defense counsel then raised objections to the scoring of several of the offense variables, arguing: (1) because Petitioner pled guilty to multiple counts of first-degree criminal sexual conduct, those same penetrations could not also be scored as "other penetrations"; (2) the videotape of another victim did not support the finding of additional penetrations; and (3) the conduct related to the dismissed charges was too

5

remote in time to justify the scoring of another guideline variable.

The videotape of the sexual conduct was made part of the record, and Petitioner allocated at length on his own behalf, expressing his shame, remorse and pain.

The court sentenced Petitioner to six terms of life imprisonment for the first-degree criminal sexual conduct convictions, nine ten-to-fifteen year terms for the second-degree criminal sexual conduct convictions, and one thirteen-to-twenty year term for the sexually abusive activity conviction. All terms were ordered to be served concurrently.

## IV. <u>Analysis</u>

### A. <u>Standard of Review</u>

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Simply stated, under section 2254(d), Petitioner must show that the state court's decision "was either contrary to, or an unreasonable application of,

[the Supreme] Court's clearly established precedents, or was based upon an unreasonable determination of the facts." *Price v. Vincent*, 538 U.S. 634, 639 (2003).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## B. <u>Sentencing claims</u>

The Court first notes that Petitioner's sentencing claims were not presented to the State courts on federal constitutional grounds during his direct appeal. It was not until Petitioner filed his motion for relief from judgment that he attempted to federalize these claims. Because the appeal from the denial of his motion for relief from judgment was dismissed as untimely, it would appear that his federal claims may have been subject to the doctrine of procedural default. However, Respondent did not raise this affirmative defense, and therefore the Court will consider the defense waived and

7

proceed to the merits. *Pudelski v. Wilson*, 576 F.3d 595, 606 (6th Cir. 2009).

Petitioner primarily argues that his sentence was increased based upon facts neither proven to a jury beyond a reasonable doubt nor admitted by him. Petitioner argues, therefore, that the trial court violated his Sixth Amendment right to a trial by jury by using factors to score his sentencing guidelines that had not been submitted to a jury and proven beyond a reasonable doubt or admitted to by Petitioner. Petitioner believes that *Blakely v. Washington*, 542 U.S. 296 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), support his position. However, the claim that Michigan's sentencing guideline system, wherein judge-found facts are used to establish the minimum sentence of an indeterminate sentence, violates the Sixth Amendment has been foreclosed by the Sixth Circuit's decision in *Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir.2009) ("[Petitioner] argues that the Michigan trial judge violated *Apprendi* by finding facts that raised his minimum sentence. But *Harris v. United States* tells us that *Apprendi'*s rule does not apply to judicial factfinding that increases a minimum sentence so long as the sentence does not exceed the applicable statutory maximum."). This Court is bound by that decision. Because Petitioner's sentence fell within the statutorily-authorized maximum penalty, which was not enhanced by judicial factfinding, no Sixth Amendment violation occurred.

Petitioner next argues that the trial court applied the wrong set of sentencing guidelines, and that he was entitled to the more favorable 2000 guidelines. Petitioner also argues that the trial court incorrectly scored the offense variables used to compute his guideline range.

8

Petitioner's claim that the state courts erred in applying one version of its sentencing guidelines instead of another raises only a state law claim not cognizable on habeas review. See *Estelle v. Booker*, No. 05-CV-72458-DT, 2006 U.S. Dist. LEXIS 56155, 2006 WL 2250959, at *14 (E.D. Mich. Aug. 3, 2006) (Rosen, J., adopting recommendation of Komives, M.J.) (citing *Dickson v. Franklin*, 130 Fed. Appx. 259, 263-64 (10th Cir. 2005). As the Sixth Circuit has explained, "[w]hen and how state law applies to a particular case is a matter on which the state supreme court has the last word. No federal issues are implicated and no federal question is presented in determining whether a change in state law is to be applied retroactively." *Houston v. Dutton*, 50 F.3d 381, 385 (6th Cir. 1995) (citation omitted).

Similarly, with respect to the scoring of the guidelines themselves, a habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. See *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. See *Estelle v. McGuire*, 502 U.S. 62, 67-68,(1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Petitioner's claim that the court improperly scored or departed from the guidelines range raises issues of state law that are not cognizable on habeas review. See *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch*

9

*v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); see also, *Branan*, 861 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas review).

Accordingly, Petitioner is not entitled to habeas relief on his sentencing claims.

### C. **Ineffective assistance of counsel claims**

Petitioner next claims that his trial counsel rendered ineffective assistance of counsel in violation of the Sixth Amendment by: (1) misleading him as to the value of his guilty plea; (2) failing to contest the scoring of the guidelines; (3) failing to contest the accuracy of the PSIR; (3) and failing to present mitigating circumstances at the sentencing hearing. He also alleges that his appellate counsel was ineffective for failing to file a timely motion to withdraw the plea and a motion for an evidentiary hearing. Respondent asserts that the claims are meritless.

In *Strickland v. Washington,* 466 U.S. at 668 (1984),the Supreme Court established a two-pronged test for determination whether a criminal defendant has received ineffective assistance of counsel. First, the convicted person must prove that counsel's performance was deficient, which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Second, the convict must show that counsel's deficient performance prejudiced him. Prejudice is established by a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.* The Supreme Court emphasized that, when assessing counsel's performance, the reviewing

court should afford counsel a great deal of deference:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent to making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Id.* at 689 (internal citations and quotations omitted).

The Supreme Court explained that to establish deficient performance, a habeas petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* at 690. To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The Sixth Circuit, applying the *Strickland* standard, has held that a reviewing court therefore must focus on whether counsel's alleged errors "have undermined the reliability of and confidence in the result." *McQueen v. Scroggy,* 99 F. 3d 1302, 1311 (6th Cir. 1996).

In the guilty plea context the petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would

have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). Furthermore, this determination depends in large part on a prediction of what the outcome of a trial might have been. *Id.* at 58-60; *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994). In other words, the petitioner must show that, but for counsel's errors, he would not have pleaded guilty, because there would have been at least a reasonable chance he would have been acquitted. If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him.

Petitioner's claims fall into two categories. First, some of his allegations concern his counsel's conduct prior to the plea and essentially argue that but for deficient advice, Petitioner would not have accepted the plea bargain. The second set of claims allege that his counsel's conduct at the sentencing hearing resulted in harsher sentence.

Beginning with the allegations that challenge the plea agreement itself, the Sixth Circuit has found that defense counsel's performance was not deficient even though he was not aware that the wrong version of the sentencing guidelines was being applied to his client's case because counsel's advice was "based upon a reasonable decision to offer a guilty plea in exchange for a lighter sentence." *Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996). Furthermore, even where counsel's advice falls below a standard of reasonableness "the state trial court's proper colloquy can be said to have

cured any misunderstanding [petitioner] may have had about the consequences of his plea" thereby rendering defense counsel errors in assurances concerning sentence or probation harmless. *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999), cert. denied, 528 U.S. 847 (1999).

In the present case, the record makes clear that Petitioner did not accept the plea bargain as the result of any bad advice by his trial counsel. Defense counsel stated several times during the plea hearing that sentencing considerations were not part of the plea bargain. Petitioner was advised that any guideline calculations made by counsel were not binding and that the trial court would score the guidelines on its own and might even impose a sentence that exceeded them. Petitioner denied that he had any different understanding of the plea agreement. Moreover, it appears that the prosecutor was prepared to offer into evidence at trial the videotape produced by Petitioner which graphically displayed him committing the crime. Petitioner's lengthy colloquy at sentencing expressing his shame, remorse and pain, undercuts the allegation that he probably would have rejected the agreement and instead elected to put his family through a trial had his attorney advised him differently. Counsel stated at the sentencing hearing that Petitioner "act[ed] with as much sensitivity as he could to avoid the necessity for any of these young girls to have to testify at any point in these proceedings." R 9-6, Sentencing Hearing, at 10.

The overwhelming evidence of Petitioner's guilt, taken together with disclosures at the plea hearing and Petitioner's statements at sentencing lead the Court to

13

conclude that there is no reasonable probability that Petitioner would have rejected the plea bargain and instead elected to go to trial but for his counsel's alleged deficient advice.

Petitioner's second set of allegations regarding his counsel's performance at the sentencing hearing itself fair no better. In fact, trial counsel did object to the scoring of several of the guideline calculations. Counsel successfully argued that the offense variable regarding similar acts should be scored at zero points instead of fifteen points. Counsel made reasoned challenges to several of the other variables, but the trial court rejected them. Counsel brought to the court's attention Petitioner's remorse, the fact that he willingly allowed the termination of his parental rights, his desire not to have the victims testify, and Petitioner's personality traits that led him to commit the crime. Counsel performed competently advocating for his client at sentencing.

Moreover, while Petitioner alleges that his counsel failed to object the version of the guidelines used by the trial court and how they were scored, this Court cannot second-guess the trial courts rejection of these claims. As the Eleventh Circuit noted, when the alleged attorney error involves the failure to object to a violation of state law that does not involve the enforcement of federal constitutional rights or interests, there is no Supreme Court case which prevents a federal court sitting in habeas review of a state court conviction from looking "to whether there is a reasonable probability that the do-over proceeding state law provides would reach a different result." See *Hammond v. Hall*, 586 F.3d 1289, 1340 (11th Cir. 2009).

In light of the fact that Petitioner's sentencing guidelines claim was rejected by the trial court when it denied Petitioner's motion for relief from judgment, Petitioner cannot show that he was prejudiced by counsel's failure to object to the scoring of the sentencing guidelines. See *Myers v. Ludwick*, No. 2009 U.S. Dist. LEXIS 112330, 2009 WL 4581693, * 3 (E.D. Mich. December 3, 2009). If "one is left with pure speculation on whether the outcome of ... the penalty phase could have been any different," there has been an insufficient showing of prejudice. *Baze v. Parker*, 371 F. 3d 310, 322 (6th Cir. 2004). Because Petitioner has offered no evidence to show that the state trial court judge would have been inclined to impose a lesser sentence, Petitioner is unable to show that he was prejudiced by his counsel's purported ineffectiveness in failing to object to the scoring of his sentencing guidelines. See *Spencer v. Booker*, 254 Fed. Appx. 520, 525-26 (6th Cir. 2007).

Therefore, Petitioner's ineffective assistance of counsel claims must fail.

### V. <u>Conclusion</u>

The Court will deny the Petition for Writ of Habeas Corpus. The Court will also deny Petitioner a Certificate of Appealability. Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial

showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack,* 529 U.S. at 484. When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.* "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny a Certificate of Appealability because Petitioner has failed to make a substantial showing of the denial of a federal constitutional right. Jurists of reason would not find this Court's resolution of Petitioner's claims to be debatable or that he should receive encouragement to proceed further. *Siebert v. Jackson,* 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002).

16

## VI. Order

IT IS ORDERED that the Petition for Writ of Habeas Corpus is **DENIED.**

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED.**

DATED: **September 17, 2010**              s/Anna Diggs Taylor
                                                      ANNA DIGGS TAYLOR
                                                     UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on September 17, 2010

Timothy Berg, #376916
Kalkaska County Jail
605 North Birch Street
Kalkaska, MI 49646

                                                       s/ Michael L. Williams
                                                       Case Manager